Jonathan A. Dessaules, AZ State Bar No. 019439
Rachel W. Maron, AZ State Bar No. 016080
DESSAULES LAW GROUP
2700 North Central Avenue, Suite 1250
Phoenix, AZ 85004
Telephone: (602) 274-5400
Facsimile: (602) 274-5401

Frank J. Johnson
Shawn E. Fields
Cecilia R. Rutherford
JOHNSON & WEAVER, LLP
110 West "A" Street, Suite 750
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Attorneys for Plaintiff Ben Schindler*

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| BEN SCHINDLER, individually and on behalf of all others similarly situated, and derivatively on behalf of COLE CREDIT PROPERTY TRUST III, INC., <br><br> Plaintiff, <br><br> v. <br><br> COLE HOLDINGS CORPORATION; COLE REIT ADVISORS III, LLC; CREINVESTMENTS, LLC; CHRISTOPHER H. COLE; MARC T. NEMER; THOMAS A. ANDRUSKEVICH; SCOTT P. SEALY; and LEONARD W. WOOD, <br><br> Defendants, <br><br> and <br><br> COLE CREDIT PROPERTY TRUST III, INC., <br><br> Nominal Defendant. | Case No.: <br><br> VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT <br><br><br> JURY TRIAL DEMANDED |

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Ben Schindler ("Plaintiff"), a shareholder of Cole Credit Property Trust III, Inc. ("CCPT III" or the "Company"), by his undersigned attorneys, brings this verified class and shareholder derivative action individually and on behalf of all others similarly situated, and derivatively on behalf of the Company, against the directors and certain affiliated entities of the Company for violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and for breaching, or aiding and abetting breaches of, fiduciary duties under state law.  Specifically, Plaintiff brings claims against Defendants Christopher H. Cole ("Cole"), Marc T. Nemer ("Nemer"), Thomas A. Andruskevich ("Andruskevich"), Scott P. Sealy ("Sealy") and Leonard W. Wood ("Wood") (collectively referred to herein as the "Individual Defendants"), all of whom are members of the Company's Board of Directors (the "Board"), and Cole Holdings Corporation ("Cole Holdings"), Cole REIT Advisors III, LLC ("Cole Advisors") and CREInvestments, LLC ("CREInvestments") (collectively referred to herein as the "Entity Defendants").  Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: a) review and analysis of public filings made by CCPT III and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; c) review of news articles, shareholder communications, and postings on CCPT III's website concerning the Company's public statements; and d) review of other publicly available information concerning CCPT III, the Individual Defendants and the Entity Defendants.

## I.     INTRODUCTION

1.     This action arises out of Defendants' efforts to loot the offers of CCPT III in a merger and internalization transaction (the "Merger") designed and implemented by the directors of CCPT III, in breach of their fiduciary duties, solely to line the pockets of Defendant Cole at the expense of all other CCPT III stockholders.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

2.     This action also arises out of Defendants' illegal breach of fiduciary duties in failing to properly consider unsolicited bids from American Realty Capital Properties, Inc. ("ARCP") to acquire the Company at a significant premium.  These actions are substantially unfair to CCPT III and its shareholders and have caused significant damage to the Company and its shareholders.

3.     This action also arises out of Defendants' filing and dissemination of materially false and misleading proxy solicitation materials (the "Proxy Statements").  The preparation and dissemination of the false and misleading Proxy Statements was intended to induce shareholder action which would result in substantial harm to Plaintiff and the Company's other shareholders.  Moreover, the dissemination of these false and misleading Proxy Statements was in violation of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 14a-9 promulgated thereunder.

4.     CCPT III is a Maryland corporation with its principal place of business in Phoenix, Arizona.  CCPT III owns a portfolio of commercial real estate properties, and qualifies and has elected to be taxed as a real estate investment trust ("REIT").  The Company is an externally managed REIT, having no employees since its formation in 2008, but instead paying hundreds of millions of dollars to Cole Advisors to run its operations.

5.     The Merger was announced on March 6, 2013, and under the terms of the Agreement and Plan of Merger ("Merger Agreement") CCPT III would pay over one hundred million dollars to "acquire" Cole Holdings and its subsidiaries including Cole Advisors, an entity that is managed and operated by the very same individuals who manage and operate CCPT III.  The Merger constitutes patent self-dealing and serves no purpose other than to allow the Individual Defendants to allocate tens of millions of dollars in corporate funds and assets to themselves.  CCPT III, Cole Holdings and Cole Advisors share all or substantially all of the same management, officers and directors. Cole Advisors is wholly-owned by Cole Holdings, which is in turn wholly-owned by Defendant Cole.  Defendant Cole is also the Chief Executive Officer, President and Chairman of the Board of CCPT III, as well as the former

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

Chief Executive Officer of Cole Advisors.  Defendant Nemer, a director of CCPT III, is also the current Chief Executive Officer of Cole Advisors.

6.      "Internalization" transactions like the Merger, in which an "external" real estate advisor is merged into a non-public REIT for the payment of "internalization fees," are regarded as highly questionable transactions.  Here, this improper Merger allowed the Individual Defendants to seize and waste the Company's assets for their own profit at the expense and to the detriment of the CCPT III and its non-affiliated shareholders.

7.      In an attempt to negate the inherent conflicts of interest and self-dealing nature of these close relationships, both CCPT III's Third Articles of Amendment and Restatement (the "Charter") and its contract with Cole Advisors (the "Advisory Agreement") include provisions that Cole Advisors is to serve in a fiduciary capacity to CCPT III and its shareholders, and that the Board is to oversee the relationship between CCPT III and Cole Advisors.  Despite these fiduciary obligations, CCPT III has been operated by Cole Advisors and the Board for the primary benefit of Defendant Cole, Defendant Cole Advisors, and certain Cole-related entities, and to the detriment of CCPT III and all of its other shareholders.

8.      The Merger provided that CCPT III would acquire Defendant Cole Holdings, a holding company that includes CCPT III's external real estate management advisor, Defendant Cole Advisor.  The Company would pay for the acquisition with $20 million in cash and approximately 10.7 million shares of CCPT III common stock, with the possibility of additional issuances of CCPT III common stock based on future contingencies (as discussed below).  Shares of CCPT III stock would be offered at $10 per share, which puts the value of 10.7 million shares at approximately $107 million.  Because Defendant Cole is the sole owner of Cole Holdings, the cash and stock, with a total value of approximately $127 million, would go directly to Defendant Cole.

9.      On March 6, 2013, CCPT III also announced that the Company would pursue a listing on the New York Stock Exchange ("NYSE").  One of the contingency provisions in the Merger Agreement is that if CCPT III is listed on the NYSE, there will be an additional

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1   issuance of approximately 2.1 million shares of CCPT III common stock to Cole Advisors.

2   That issuance would bestow an additional windfall worth millions of dollars on the principals

3   of Cole Advisors and Cole Holdings, in particular Defendant Cole, bringing the total value of

4   the cash and stock that he will receive under the Merger to at least $148 million.

5          10.    On March 12, 2013, Defendants caused the Company to issue a Preliminary

6   Proxy, inviting shareholders to attend the Company's Annual Meeting on June 19, 2013.  The

7   Preliminary Proxy also informed shareholders of the Merger and solicited shareholder votes to

8   re-elect the members of the Board and to approve extensive amendments to the Charter (the

9   "Charter Amendment").  The Proxy misrepresented and/or omitted material information about

10  the true value of the Company and the Merger, the closing of which was a prerequisite to the

11  Charter Amendments and further misrepresented the impact of the Charter Amendment.

12         11.    Supplemental    Proxy    Statements    disseminated    by    Defendants    also

13  misrepresented and/or omitted material information regarding the competitive acquisition bids

14  made by ARCP, and the rejection by the Defendants of those bids.  These misrepresentations

15  were and are designed to secure shareholder approval for the self-serving Charter Amendments

16  and the Defendants' re-election to the Board.

17         12.    As justification for the Merger, the Individual Defendants falsely suggest to

18  shareholders that by acquiring Cole Advisors, the Company would be acquiring the future

19  income stream and value of a real estate company with assets under management ("AUM") of

20  over $12 billion. This was disingenuous and materially misleading because, as the Individual

21  Defendants are aware, virtually all of the AUM that Cole Advisors manages are assets of Cole-

22  related REITs. The majority of the AUM that Cole Advisors manages is the AUM of CCPT

23  III, which means that under the terms of the merger, CCPT III would pay hundreds of millions

24  of dollars to acquire the right to manage itself.  The remaining AUM of Cole Advisors consists

25  almost exclusively of the AUM of Cole Credit Property Trust II, Inc. ("CCPT II") and Cole

26  Credit Property Trust, IV, Inc. ("CCPT IV").  Further, CCPT II has announced that the $3.5

27

28
                                          4
     VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

billion of AUM from that entity is being acquired by a third party, meaning that there will be no additional income stream to CCPT III from those assets.

13.    The terms of the Merger were patently harmful to CCPT III and its shareholders. The Merger plan was a misappropriation of corporate assets, and provided for additional offerings which would further dilute the value of CCPT III stock, while allowing the principals of Cole Advisors and Cole Holdings to rake in their profits to the detriment of the Company.

14.    The Individual Defendants already own, manage and operate both CCPT III and Cole Advisors, and the Merger allowed the Individual Defendants to pay themselves tens of millions of dollars while maintaining the current management structure of CCPT III.

15.    As part of the Merger, the Individual Defendants also approved lavish employment agreements for Defendant Cole and Defendant Nemer, which provide for annual base salaries of $750,000 and $625,000, respectively, "subject to increase (but not decrease)," annual incentive bonuses of between 150% and 300% of annual base salary, plus additional benefits including annual equity awards starting in 2015, and full indemnification.  Further, Defendant Cole and Defendant Nemer will also receive long-term incentive and retention awards of CCPT III shares, valued at $7.5 million for Defendant Cole and $6.0 million for Defendant Nemer. This additional compensation is above and beyond the direct payments of millions of dollars in cash and CCPT III stock that will be provided to Cole Holdings and Cole Advisors, which are wholly owned by Defendant Cole.

16.    In further breach of their fiduciary duties to CCPT III and its shareholders, the Individual Defendants repeatedly rejected the highly competitive bids offered by ARCP to acquire CCPT III, and never considered any options other than the Merger.  The Individual Defendants failed to consider or evaluate other external real estate management advisors who could manage the properties owned by CCPT III, and did not conduct an objective analysis to determine the actual value of the internalization of Cole Holdings and Cole Advisors.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

17.     In part, ARCP made its first bid on March 20, 2013, which the Board rejected out of hand one day later.  ARCP improved its bid on March 27, 2013 and April 2, 2013, bids which the Board initially ignored.  Finally, on April 5, 2013, the Board rejected ARCP's final revised proposal.  Simultaneously, on April 5, 2013, Defendants caused the Company to close the Merger.

18.     The Board's decisions were plainly based on their own self-interest and not in accordance with the fiduciary duties owed to the shareholders of CCPT III, because the ARCP bids, while fair to all of the shareholders of CCPT III, were speedily and summarily rejected. The Individual Defendants were uninterested in any alternative to the Merger, because only the Merger allows them to siphon the maximum possible personal profits away from the Company.

19.     The directors of CCPT III owe fiduciary duties to CCPT III and its shareholders, and under the advisory agreement between Cole Advisors and CCPT III, Cole Advisors similarly owes fiduciary duties to CCPT III and its shareholders. The Individual Defendants voted in favor of the Merger, knowing that the terms of the Merger were harmful to the Company and its shareholders, in breach of their fiduciary duties.

20.     Defendants Cole, Nemer, Andruskevich, Sealy, and Wood are the members of the Company's Board.  Defendants Cole and Nemer each have a substantial multimillion dollar personal financial interest in the Merger, and Defendants Andruskevich, Sealy, and Wood are financially and professionally bound to Defendants Cole and Nemer.

21.     Plaintiff, a long-time and significant CCPT III shareholder, did not race to the courthouse immediately after announcement of the Merger on March 6, 2013.  Although Plaintiff tentatively determined following this announcement that the Merger was not in the best interests of the Company or its shareholders, he decided that the Company would be better served if a more thorough analysis was conducted before the Company's directors were accused of malfeasance.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

22.     In particular, Plaintiff observed that the general dearth of financial data concerning the Merger supplied by the Company in the days following the announcement, particularly regarding target company Cole Holdings, would require Plaintiff to conduct substantial additional research to determine whether the Merger was substantively fair to CCPT III and its public shareholders.

23.     Plaintiff also noted that, in connection with the Merger, the Company would "seek stockholder approval to amend its charter" in advance of becoming a publicly traded company, and would issue "solicitation material in respect of the charter amendments to be presented to CCPT III's stockholders for consideration at the 2013 annual stockholders' meeting." Given this fact, Plaintiff waited for the Company's preliminary proxy statement and related materials before commencing this action.

24.     During this review period, Plaintiff became aware of the unsolicited third party offer from ARCP on March 20, 2013, to acquire the Company at a significant premium. While reviewing this offer and Defendants rejection of the same, Plaintiff also became aware of ARCP's two revised and improved offers for the Company on March 27, 2013, and April 2, 2013, respectively.

25.     Plaintiff was disappointed by Defendants' decision to reject ARCP's first offer without providing sufficient explanation to CCPT III's shareholders.   However, after Defendants' again quickly rejected ARCP's two revised offers on April 5, 2013 without sufficient justification, and simultaneously closed the Merger to the detriment of the Company, Plaintiff concluded that Defendants neither were acting in the best interests of the Company nor could or would exercise independent judgment in considering a demand to bring this litigation on behalf of the Company.  For these reasons, Plaintiff initiated this action in the immediate aftermath of the closing of the Merger to redress the wrongs suffered by the Company and to prevent Defendants from holding a tainted and improper shareholder vote on June 19, 2013 to amend the CCPT III charter and secure their own re-election, at least until

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

adequate further disclosures about the Merger and Defendants' malfeasance are made to shareholders.

26. A pre-suit demand upon the CCPT III Board is a useless and futile act. The CCPT III Board has not, and will not, commence litigation against Defendants or vigorously prosecute such claims, because they face a substantial likelihood of liability to CCPT III their breaches of fiduciary duty. Thus, Plaintiff rightfully brings this action on behalf of CCPT III to hold the Defendants responsible for the damages they have caused CCPT III.

## II.      JURISDICTION AND VENUE

27. This Court has jurisdiction over Defendants pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise in part out of the laws of the United States, §27 of the Exchange Act, 28 U.S.C. §78aa. The claims hereunder arise under §14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, and §20(a) of the Exchange Act. All of Plaintiff's claims arising under the Exchange Act are within the exclusive jurisdiction of this Court. In addition, this Court has jurisdiction over Defendants pursuant to 28 U.S.C. §1332, as there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims, as the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

29. Venue is proper in this Court because CCPT III has a substantial presence in Arizona and is headquartered in Phoenix, Arizona. Moreover, each individual defendant has had extensive contacts with Arizona as a director and/or officer of CCPT III or otherwise, which makes the exercise of personal jurisdiction over them proper.

8

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1     **III.     THE PARTIES**

2          **A.     Plaintiff**

3          30.     Plaintiff Ben Schindler is an individual shareholder of CCPT III.  He purchased

4     5,000 shares of CCPT III stock on November 29, 2011 and has continuously held his stock

5     ever since.  He is a citizen of California.

6          **B.     Nominal Defendant**

7          31.     Nominal Defendant CCPT III is a Maryland corporation with its principal place

8     of business at 2325 East Camelback Road, Suite 1100, Phoenix, Arizona. CCPT III is a non-

9     publically traded REIT, which requires it to distribute at least 90% of its REIT taxable income

10    to its shareholders annually.

11         32.     CCPT III is a REIT that specializes in "Necessity Retail" properties. "Necessity

12    Retail" properties include retail tenants who provide consumer staples and other necessities for

13    American consumers on an everyday basis. This includes pharmacies, home improvement

14    stores, national superstores, restaurants and regional retailers, such as CVS and Nordstrom

15    Rack.  CCPT III owns over 900 properties with combined retail space of over 39 million

16    square feet, covering over 50 different industry segments. CCPT III has a near 100% tenant

17    occupancy rate.

18         33.     CCPT III was formed to acquire and operate a diverse portfolio of core

19    commercial real estate investments consisting primarily of retail properties throughout the

20    United States. CCPT III's real property assets consist primarily of single-tenant properties and

21    multitenant "power centers" anchored by large, creditworthy national or regional retailers.

22    CCPT III's retail properties are typically subject to long-term triple net or double net leases,

23    which mean the tenants are obligated to pay most of the expenses of maintaining the property.

24    CCPT III holds most properties for at least five years.

25         34.     CCPT III has no paid employees and is externally managed by Cole Advisors.

26    Two of CCPT III's directors, including the Chairman of the Board, are senior officers and/or

27    directors of Cole Advisors. Substantially all of CCPT III's business is conducted through Cole

28

9

REIT III Operating Partnership ("CCPT III OP"), a Delaware limited partnership. CCPT III is the sole general partner of CCPT III OP. Cole Advisors is the sole limited partner of CCPT III OP. All of the Cole-related entities are intimately linked and share the same officers and directors.

35.     As of September 30, 2012, CCPT III had issued approximately 487.4 million shares of common stock through its initial offering at $10 per share (which closed on October 1, 2010), follow-on offer (which closed on April 27, 2012) and distribution reinvestment program (the "DRIP"). CCPT III common stock is not publicly traded and all of its shareholders own non-liquid securities. In total, CCPT III has raised over $4.8 billion from investors such as Plaintiff.

36.     CCPT III's Charter provides that CCPT III's common stock will not be listed on a national securities exchange and that CCPT III may seek to list its common stock for trading on a national securities exchange only if a majority of its independent directors believe listing would be in the best interest of its shareholders. The Charter states that CCPT III will seek to list on a national stock exchange before October 1, 2020. Prior to the announcement of the Merger, and as recently as November 9, 2012, CCPT III stated it was not intending to pursue a listing in the immediate future. However, just four months later, CCPT III announced not only its intention to go public, but also its intention to bestow upon the Individual Defendants a massive financial payout from which no other shareholder would benefit.

**C.     Individual Defendants**

37.     Defendant Cole is the founder either directly or indirectly of each of the entities described herein, including CCPT III.  He is the sole owner of Cole Holdings, which owns Cole Advisors, the entity that will be "acquired" by CCPT III in the multimillion dollar Merger, and therefore he will receive the lion's share of the benefits of that transaction.  Cole is a citizen of Arizona.

38.     Defendant Cole has served as the Chief Executive Officer, President and Chairman of the Board of CCPT III since CCPT III's formation in January 2008. As sole

1  shareholder of Defendant Cole Holdings since its formation in August 2004, Defendant Cole

2  has served as its Chairman of the Board since October 2007, and previously served as its Chief

3  Executive Officer from August 2004 until June 2011, as its President and Treasurer from

4  August 2004 until April 2010, and as its Secretary from October 2007 to April 2010. He also

5  has served as the Chief Executive Officer of Cole Advisors from its formation in January 2008

6  until June 2011, as its President from January 2008 until April 2010 and as its Treasurer from

7  January 2008 until September 2008.

8       39.    Defendant Cole also has served as (a) Chief Executive Officer, President and

9  Chairman of the Board of Cole Credit Property Trust I, Inc. since its formation in March 2004;

10  (b) Chief Executive Officer of Cole REIT Advisors, LLC from its formation in April 2004

11  until June 2011, and as President from April 2004 until March 2007 and from October 2007

12  until April 2010; (c) Chief Executive Officer, President and Chairman of the Board of Cole

13  Credit Property Trust, Inc. II since its formation in September 2004; (d) Chief Executive

14  Officer of Cole REIT Advisors II, LLC from its formation in September 2004 until June 2011,

15  and as President from September 2004 until March 2007 and from October 2007 until April

16  2010; (e) Chief Executive Officer, President and Chairman of the Board of Cole Credit

17  Property Trust IV, Inc. since its formation in July 2010; and (f) Chief Executive Officer of

18  Cole REIT Advisors IV, LLC ("CCPT IV Advisors") from its formation in July 2010 until

19  June 2011.

20       40.    Defendant Cole controls all of the Cole-related entities, including the Cole-

21  related entities that are the subject of this litigation. Defendant Cole also controls CCPT III as

22  its Chief Executive Officer, President and Chairman of the Board. Through his interlocking

23  control of all of the Cole-related entities, Defendant Cole has acted to benefit himself through

24  these shell corporations, and the other Individual Defendants, to the detriment of CCPT III and

25  the remaining shareholders of CCPT III, including Plaintiff.

26       41.    Defendant Nemer has served as a director of CCPT III since May 2010.

27  Defendant Nemer also has served as Chief Executive Officer of Defendant Cole Holdings

28

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

since June 2011 and as its President since April 2010. Defendant Nemer has served as Chief Executive Officer of Defendant Cole Advisors since June 2011 and its President since April 2010. He previously served as Cole Advisors' Executive Vice President and Managing Director of Capital Markets from September 2008 until April 2010, and as its Executive Vice President, Securities and Regulatory Affairs from its formation in January 2008 until September 2008. Defendant Nemer has also served as President, Secretary and Treasurer of Cole Capital Corporation since January 2008, and a member of the boards of directors of numerous Cole-related entities, including Cole Credit Property Trust I, Inc., Cole Credit Property Trust IV, Inc. and Cole Income NAV Strategy.  Nemer is a citizen of Arizona.

42.     Defendant Nemer's financial interests are bound completely with Defendant Cole. Defendant Nemer has no ability to act in a manner independent of Defendant Cole. Defendant Nemer also will receive a substantial financial windfall from the Merger as a principal of Cole Advisors.  Defendant Nemer is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

43.     Defendant Andruskevich has served as a director of CCPT III since October 2008 and is a member of its Audit Committee. As a purported "independent director," Defendant Andruskevich was, pursuant to CCPT III's Charter, responsible for monitoring the performance and fees paid to Cole Advisors.  With respect to the Merger, he was a member of the "special committee of independent directors" entrusted to evaluate the terms of the Merger to ensure that the deal was in the best interests of CCPT III and its shareholders.  Defendant Andruskevich received compensation in the amount of $222,175 for the year 2012 and is a citizen of Florida.

44.     As one of the directors who approved the massive financial windfall resulting from the Merger, Defendant Andruskevich cannot fairly evaluate his own misconduct. Defendant Andruskevich also is financially, professionally, and personally bound to Defendant Cole. Defendant Andruskevich is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

45.     Defendant Sealy has served as a director of CCPT III since October 2008. Mr. Sealy has also served as a member of the Board of Directors of Cole Credit Property Trust IV, Inc. since 2012. As a purported "independent director," Mr. Sealy was, pursuant to CCPT III's Charter, responsible for monitoring the performance and fees paid to Cole Advisors.  With respect to the Merger, he was a member of the "special committee of independent directors" entrusted to evaluate the terms of the Merger to ensure that the deal was in the best interests of CCPT III and its shareholders. Defendant Sealy received compensation in the amount of $218,956 for the year 2012.  Sealy is a citizen of Texas.

46.     As one of the directors who approved the massive financial windfall resulting from the Merger, Defendant Sealy cannot fairly evaluate his own misconduct. Defendant Sealy also is financially, professionally, and personally bound to Defendant Cole. Defendant Sealy is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

47.     Defendant Wood has served as a director of CCPT III since October 2008. As a purported "independent director," Mr. Wood was, pursuant to CCPT III's Charter, responsible for monitoring the performance and fees paid to Cole Advisors.  With respect to the Merger, he was a member of the "special committee of independent directors" entrusted to evaluate the terms of the Merger to ensure that the deal was in the best interests of CCPT III and its shareholders. Defendant Wood received compensation in the amount of $281,145 for the year 2012.  Wood is a citizen of Florida, Georgia, and Colorado.

48.     As one of the directors who approved the massive financial windfall resulting from the Merger, Defendant Wood cannot fairly evaluate his own misconduct. Defendant Wood also is financially, professionally, and personally bound to Defendant Cole. Defendant Wood is unable to make independent and appropriate decisions on behalf of CCPT III and in the best interests of CCPT III and its shareholders.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1

**D.     Entity Defendants**

2     49.     Defendant Cole Holdings, an Arizona corporation, is a real estate investment

3  management firm that shares its principal place of business with CCPT III at 2325 East

4  Camelback Road, Suite 1100, Phoenix, Arizona. Cole Holdings is wholly owned by Defendant

5  Cole, who also serves as Cole Holdings' Executive Chairman of the Board. Defendant Nemer

6  is the President and Chief Executive Officer of Cole Holdings.

7     50.     Defendant Cole Advisors is a Delaware limited liability company and shares its

8  principal place of business with CCPT III and Cole Holdings at 2325 East Camelback Road,

9  Suite 1100, Phoenix, Arizona. Defendant Cole was the Chief Executive Officer of Cole

10  Advisors until 2011, at which time he was succeeded by Defendant Nemer. Cole Advisors

11  serves as the real estate advisor for CCPT III. Pursuant to CCPT III's Charter and the Advisory

12  Agreement between CCPT III and Cole Advisors, Cole Advisors served as an agent for CCPT

13  III and at all relevant times has owed a fiduciary responsibility and duty to CCPT III and its

14  shareholders. CCPT III's Board of Directors has direct oversight responsibilities over Cole

15  Advisors.

16     51.     Defendant CREInvestments is a Maryland limited liability company and a

17  direct, wholly owned subsidiary of CCPT III. CCPT III formed CREInvestments for the sole

18  purpose of facilitating the Merger. Under the Merger Agreement, Cole Holdings and Cole

19  Advisors would be merged into CREInvestments, which would then become a wholly owned

20  subsidiary of CCPT III.

21     52.     Defendants, and each of them, are sued as principals and as aiders and abettors,

22  as herein alleged. At all relevant times, each Defendant was and is the agent of each of the

23  remaining Defendants, and in doing the acts alleged herein, was acting within the course and

24  scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of

25  the defendants. There is a unity of interest and ownership between the Defendants listed above,

26  such that the acts of the one are for the benefit and can be imputed as the acts of the other.

27

28

14

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

IV.     **SUBSTANTIVE ALLEGATIONS**

A.     **Background**

53.     From its inception, CCPT III has had no employees. Cole Holdings, CRE III Advisors and other Cole Holdings-related entities have conducted CCPT III's day-to-day operations (including investment analysis, acquisitions, financing, development, due diligence, asset management, property management and certain administrative services, such as financial, tax and regulatory compliance reporting), pursuant to an Advisory Agreement and a Property Management and Leasing Agreement. CCPT III has paid hundreds of millions of dollars in fees and expense reimbursements to Cole Holdings and its related entities for these services.

54.     The prospectus for CCPT III describes the relationship between the Company and Cole Advisors by stating that "[t]here are substantial conflicts of interest between us and our advisor and its affiliates. Key persons associated with our advisor perform similar duties for other Cole-sponsored programs that may use investment strategies similar to ours creating potential conflicts of interest when allocating investment opportunities. In addition, our advisor and its affiliates have substantial discretion in managing our operations, and we pay them substantial fees."

55.     CCPT III has a fixed life and there is no efficient, liquid market in which its shareholders can sell their CCPT III common stock. Pursuant to its Charter, if the Company's stock is not listed on a national securities exchange by October 1, 2020, the Company must either (i) seek stockholder approval of an extension or the elimination of this listing deadline; or (ii) seek stockholder approval to adopt a plan of liquidation. The objective of this Charter provision is to ultimately provide CCPT III shareholders with liquidity and an exit strategy for their investments.

56.     Under the Advisory Agreement, Cole Advisors is required to evaluate and recommend an "appropriate exit strategy to [CCPT III's] board of directors." The Advisory Agreement provides that upon a Listing: the Advisory Agreement is to terminate, CRE III Advisors must proceed with the orderly transition of management to CCPT III, and CRE III

Advisor will receive a Subordinated Listing Incentive Fee calculated as: "15.0% of the amount by which (i) the Market Value of the Company's outstanding Shares plus distributions paid by the Company prior to Listing, exceeds (ii) the sum of (A) 100% of Invested Capital and (B) the total Distributions required to be paid to the Stockholders in order to pay the Stockholders' 8.0% Return from inception through the date that Market Value is determined."

**B.    The Individual Defendants Announced the Merger**

57.    As alleged above, on March 6, 2013, CCPT III informed its shareholders that it had entered into a definitive merger agreement with Cole Holdings.

58.    The stated purpose of the Merger Agreement was to internalize the functions of Cole Advisors and the other Cole Holdings-related entities, which are 100% owned by Cole Holdings and Defendant Cole, into CCPT III. Upon consummation of the Merger, CCPT III purportedly would not need to contract with outside companies to perform its day-to-day operations.

59.    Upon completion of the Merger, Cole Holdings, Cole Advisors, and the Cole Holdings-related entities would become a wholly owned subsidiary of CCPT III, and CCPT III will change its name to Cole Real Estate Investments, Inc. and pursue a listing on the New York Stock Exchange ("NYSE").

60.    According to Cole Holdings, the Merger was expected to close in the second quarter of 2013 upon the satisfaction of customary closing conditions and applicable regulatory approvals.  As discussed below, the Merger closed on April 5, 2013, just five business days into the second quarter.

**C.    The Merger was the Result of Blatant Self-Dealing**

61.    Shortly after CCPT III and Cole Holdings jointly issued a press release announcing the Merger Agreement, the media reported on this "sweetheart deal" for Defendants and the investor "criticism" of internalizations, like the one here, where Cole Holdings and Cole Advisors are getting "large upfront payments."

16

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

62.     This Merger is no different.   The Merger Agreement was approved by the Board without any vote of the shareholders, meaning that Plaintiff and CCPT III's other non-affiliated shareholders are entirely reliant upon the Individual Defendants to effectuate the Merger under terms most favorable to CCPT III.   Because the Individual Defendants sit on both sides of the transaction and the public stockholders in CCPT III have no voting authority, the Individual Defendants have exploited and abused their position to put a deal in place that only benefits them.

63.     For example, Defendant Cole will receive approximately $150 million worth of consideration from the Merger, in addition to future contingent payments,

(a)     $20 million in cash;

(b)     10,711,225 shares of CCPT III common stock (valued at approximately $107 million, assuming $10 per share listing and trading price);

(c)     2,142,245 shares of CCPT III common stock after a listing on the NYSE (valued at approximately $21 million, assuming $10 per share listing and trading price);

(d)     Additional shares of CCPT III common stock potentially payable in 2017 as an "earn-out" contingent upon the acquired business' demonstrated financial success based on two criteria: (i) the acquired business generating EBITDA above a minimum threshold and (ii) CCPT III's stock performance relative to its peer group; and

(e)     Additional shares of CCPT III common stock payable based on CCPT III's market value over the 30-day period beginning six months after CCPT III's listing, pursuant to the current Advisory Agreement. Cole Holdings agreed to a 25% reduction from the amount payable under the current advisory agreement, if any.

64.     In addition, Defendants Cole and Nemer have secured for themselves employment agreements with CCPT III providing for:

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

a. annual base salaries of $750,000 and $625,000, respectively, "subject to increase (but not decrease);"

b. annual incentive bonuses of 150% of annual base salary at target and 300% of annual base salary at maximum;

c. starting in the 2015 fiscal year, an annual equity award grant to each;

d. health, fringe, and other benefits for each;

e. indemnification to the fullest extent applicable to directors and officers of the Company and coverage under a directors' and officers' liability insurance policy; and

f. long-term incentive and retention awards in respect to CCPT III's shares, with an accounting expense value equal to $7.5 million for Defendant Cole and $6.0 million for Defendant Nemer.

65.     The Individual Defendants provided no financial data to support the tremendous upfront payment (plus the additional contingent payments) to be paid to Defendant Cole in the Merger.

66.     Rather, the Individual Defendants withheld Cole Holdings' nonpublic financial statements (see, e.g., Merger Agreement at 14) and made conclusory statements in their press release announcing the Merger that the internalization would be "immediately accretive to CCPT III's funds from operations" because CCPT III would have a "new income stream of fees earned by Cole Holdings from the management of other real estate vehicles, including Cole Credit Property Trust IV, Inc. ["CCPT IV"], Cole Corporate Income Trust, Inc. ["CCIT"] and Cole Real Estate Income Strategy (Daily NAV) ["Cole Income NAV Strategy"]."

67.     Neither the Merger Agreement nor the press release, nor the Individual Defendants' Power Point presentation (filed with CCPT III's 3/6/2013 Form 8-K) discussing the Merger, quantified Cole Holdings' purported income stream or made representations as to the duration of the income stream of fees flowing from CCPT IV, CCIT and Cole Income NAV Strategy or any other private programs or entities for whom Cole Holdings may provide

advisory and management services. The Defendants did not provide any independent financial analysis supporting or justifying the cost to CCPT III of this self-dealing Merger.

68.    What Defendants concealed and failed to disclose was that: (i) Cole Holdings only derives a small percentage of its overall income from these entities; (ii) each of these entities is either in the formative stage with no basis from which to project recurring, payable fees to Cole Holdings or has waived fees to indicate that the advisory agreements have generated a loss for the company; and (iii) each of these entities owns relatively few properties. Moreover, it is significant that each of these entities has a terminable contract that can renew annually upon mutual consent, terminate by either party for any reason with 60 days written notice or immediately terminate upon the entity's listing. Accordingly, there is no guarantee that Cole Holdings will earn an income stream from these entities this year or in any successive year.

69.    Defendants also misrepresented and withheld key information that would reveal that Cole Holdings' projected income stream has dramatically dwindled as a result of the pending merger of affiliate Cole Credit Property Trust II, Inc. ("CCPT II") with self-advised Spirit Realty Capital. In the past three years alone, CCPT II paid a total of $65.5 million in fees to Cole Holdings for management services on CCPT II's 752 properties, which have 21.2 million rentable square feet.

70.    Further, Defendants misrepresented Cole Holdings' management statistics to create the false impression that Cole Holdings' income stream supports the egregious $150 million upfront payment. For example, in the Power Point presentation titled "A Transformational Transaction: A High Attractive Real Estate Portfolio and A Leading Real Estate Investment Manager" (the "Power Point") that was provided to investors with the press release announcing the Merger, Defendants stated that Cole Holdings has under management 2,000 properties equating to 76 million rentable square feet. However, when CCPT II's properties are backed out because of its pending merger with Spirit Realty Capital and CCPT III's properties are then backed out by virtue of the Merger, it becomes painfully obvious that

1    CCPT III represents the bulk of Cole Holdings' assets under management such that the Merger

2    was nothing more than a farce under which CCPT III would pay an exorbitant price to buy

3    itself out of its terminable contracts with Cole Holdings that would terminate anyway upon

4    CCPT III's anticipated listing on the NYSE.

5          71.    The PowerPoint Presentation also referred specifically to new fee income to

6    CCPT III from CCPT IV, CCIT and Cole Real Estate Income Strategy. CCPT IV has raised

7    only $300 million of capital and owns 70 properties, CCIT has $261 million of capital and

8    owns 19 properties, and Cole Real Estate Income Strategy has $24 million of capital and owns

9    12 properties. Those realities contrast sharply with the purported "$12 billion of real estate"

10   and 2,000 "high quality income producing properties" that CCPT III is purportedly getting in

11   the Merger.

12         72.    Importantly, the payments being made to Defendant Cole directly contradicted

13   and circumvented the intent and clear language of the Advisory Agreement. Defendant Cole

14   and Cole Advisors would get incentive, performance based compensation upon a Listing if

15   CCPT III reached certain performance benchmarks measured by an independent measure.

16   Upon a Listing, for example, the Advisor would have been terminated and would have been

17   entitled to a fee that was subordinated to a guaranteed minimum return to the shareholders. In

18   the Merger Agreement, such listing fee was characterized as "contingent" (meaning that the

19   Cole Advisors might not even earn it), but provided for Defendant Cole to receive substantial

20   consideration nonetheless.

21         **D.    The Individual Defendants Disseminated Misleading Proxy Statements**

22         73.    In addition to structuring a Merger solely for their own benefit and misleading

23   shareholders about the substantive benefits of the deal, the Individual Defendants have also

24   disseminated no fewer than 16 Proxy Statements that materially mislead shareholders about

25   the Merger.  The dissemination of these misleading Proxy Statements constituted a breach of

26   the Individual Defendants fiduciary duties to CCPT III and its shareholders, and also violated

27   §§ 14(a) and 20(a) of the Exchange Act.

28
                                          20

74.     Typically in connection with a proposed merger, a company will disseminate a proxy statement describing the merger and soliciting shareholder approval of the deal.  Here, the Individual Defendants simply announced and closed the Merger without soliciting shareholder approval.  However, the Individual Defendants have requested that shareholders vote to approve the following recommendation at the Company's annual shareholder meeting on June 19, 2013: "approval of an amendment and restatement of our charter to be effective immediately prior to a listing of our common stock on the New York Stock Exchange ("NYSE")."

75.     As the Individual Defendants have repeatedly stated, this recommendation is inextricably linked to the Merger.  As explained the Company's March 12, 2013 Preliminary Proxy, the Individual Defendants plan to cause the Company to list its shares of common stock on the NYSE following the Merger: "Simultaneously with our announcement of the proposed acquisition, we announced our intent to list our shares of common stock on the NYSE.  A charter amendment is desirable in connection with a listing of our common stock."   In other words, the Individual Defendants want shareholders to approve the Charter Amendment so, among other things, the Individual Defendants can reap the benefits of the unfair Merger.  These benefits include, *inter alia*, the issuance of nearly $130 million in common stock to Cole after the Company goes public, and long-term incentive and retention awards for Cole and Nemer payable in CCPT III NYSE-listed stock.

76.     Clearly, if CCPT III's shareholders were fully and accurately informed about the unfairness of the Merger, they likely would not vote to approve the Charter Amendment and reward the Individual Defendants for their misconduct.  Unfortunately, the Individual Defendants have repeatedly misled shareholders about and/or failed to disclose to shareholders material facts about the Merger.

77.     The Individual Defendants have caused the Company to file with the SEC the following materially false and misleading Proxy Statements describing the Merger and soliciting shareholder approval for the Charter Amendment:

| Date | Filing | Contents |
|------|--------|----------|
| 3/6/13 | 8-K | Press release announcing proposed merger <br> PowerPoint presentation describing merger; related exhibits |
| 3/8/13 | DEF 14A | Agreement and Plan of Merger <br> Employment Agreements for Cole and Nemer |
| 3/8/13 | 8-K | Announcement of filing of Agreement and Plan of Merger |
| 3/12/13 | PRE 14A | Announcement of annual shareholders meeting on June 19, 2013 <br> Description and solicitation of shareholder approval for certain proposals (including Charter Amendment) |
| 3/21/13 | DEF 14A | Description of unsolicited offer for Company from ARCP on 3/20 <br> Notification of rejection of offer by Board |
| 3/21/13 | 8-K | Description of unsolicited offer for Company from ARCP on 3/20 <br> Notification of rejection of offer by Board |
| 3/25/13 | DEF 14A | Additional materials describing Merger <br> PowerPoint presentation describing merger; related exhibits |
| 3/25/13 | 8-K | Additional materials describing Merger <br> PowerPoint presentation describing merger; related exhibits |
| 3/28/13 | DEF 14A | Description of unsolicited revised offer from ARCP on 3/27 |
| 3/28/13 | 8-K | Description of unsolicited revised offer from ARCP on 3/27 |
| 4/3/13 | DEF 14A | Description of second unsolicited revised offer from ARCP on 4/2 |
| 4/5/13 | DEF 14A | Notification of rejection of second unsolicited offer by Board |
| 4/5/13 | 8-K | Notification of rejection of second unsolicited offer by Board |
| 4/5/13 | DEF 14A | Notification of closing of Merger |
| 4/5/13 | 8-K | Notification of closing of Merger |

78.     Each of these SEC filings stated that it was "Soliciting material pursuant to Rule 14a-12 under the Exchange Action."

79.     In addition, each of these SEC filings stated that the filing "may be deemed to be solicitation material in respect of the charter amendments to be presented to the Company's stockholders for consideration at the 2013 annual stockholders' meeting."

22

80.     These Proxy Statements were false and misleading in a number of material respects with respect to the Merger.  For example, the Individual Defendants repeatedly touted the "acquisition" of Cole Holdings by stating that the Merger would be "immediately accretive to CCPT III's funds from operations" because CCPT III would have a "new income stream of fees earned by Cole Holdings from the management of other real estate vehicles."  The Individual Defendants also claimed these vehicles include "over $12 billion of real estate assets" that Cole Holdings "currently manages."

81.     These statements were materially misleading because the Individual Defendants failed to disclose any particularized, independent financial data about Cole Holdings to justify these conclusory statements.  In fact, under the very terms of the Merger Agreement, the Individual Defendants agreed to withhold Cole Holdings' nonpublic financial statements, thus preventing any public CCPT III shareholder from independently evaluating the fairness of the Merger and testing the optimistic statements above.

82.     In particular, none of the Proxy Statements quantify Cole Holdings' purported income stream or make representations as to the duration of the income stream of fees flowing from CCPT IV, CCIT and Cole Income NAV Strategy or any other private programs or entities for whom Cole Holdings may provide advisory and management services. Moreover, the Individual Defendants have not provided any independent financial analysis or fairness opinion supporting or justifying the cost to CCPT III of this self-dealing Merger.  While such information is routinely provided to shareholders in support of a proposed merger, it appears that the Individual Defendants, by refusing to put the Merger itself to a vote and only soliciting shareholder approval for the Charter Amendment, are attempting to implement their personal profit-making scheme by providing as little information to the shareholders as possible.

83.     The statements regarding the size of Cole Holdings' assets and the "immediately accretive" value to CCPT III were false and misleading for additional reasons.  First, the Individual Defendants failed to disclose that the majority of the AUM that Cole

Holdings manages is the AUM of CCPT III, which means that under the terms of the Merger, CCPT III would pay hundreds of millions of dollars to acquire the right to manage itself.

84.     These statements were also materially misleading because the Individual Defendants failed to disclose that the vast majority of the remaining AUM of Cole Holdings consists almost exclusively of the AUM of Cole Credit Property Trust II, Inc. ("CCPT II"), which recently announced that its $3.5 billion of AUM is being acquired by a third party, meaning that there will be no additional income stream to CCPT III from those assets.  In the past three years alone, CCPT II paid a total of $65.5 million in fees to Cole Holdings for management services on CCPT II's 752 properties, which have 21.2 million rentable square feet.  This income stream will no longer be available to Cole Holdings, meaning that it will also no longer be available to CCPT III.

85.     The Individual Defendants have also solicited shareholder approval for their re-election to the CCPT III Board at the June 19, 2013 annual shareholders meeting.  Clearly, shareholders would not vote to re-elect the Individual Defendants if they were aware of their self-serving conduct in effectuating the Merger or of the true but undisclosed facts described above demonstrating the substantive unfairness of the Merger.  Thus, the above materially misleading statements and omissions in the Company's Proxy Statements were also designed specifically to secure shareholder approval for the Individual Defendants' re-election proposal as well.

86.     The Proxy Statements were also false and misleading because they do not provide any information to justify Defendant Cole's exorbitant $137 million internalization fee.  The Proxy Statements fail to disclose how this amount was calculated, or why it is necessary or proper given Cole's presence on both sides of the transaction.

87.     These Proxy Statements were also materially false and misleading because they failed to disclose whether the Individual Defendants explored any alternatives to the costly Merger that could have provided an effective liquidity event for the REIT's shareholders that was in their best interests at less expense.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

88.     In addition, the Preliminary Proxy filed on March 12, 2013 included a question-and-answer section, which includes the following exchange:

> Q:     Why is the board of directors seeking to amend and restate the charter?
>
> A:     On March 5, 2013, we entered into a merger agreement to acquire Cole Holdings Corporation – our sponsor – and its subsidiaries, including those that serve as our advisor, property manager and dealer manager. If the acquisition of Cole Holdings Corporation is completed, we will become a self-advised and self-administered company, which means that we will provide our own investment, administrative, management, maintenance and other real estate services internally through our own employees. The acquisition is expected to close prior to the date of our annual meeting, subject to the satisfaction of customary closing conditions (including applicable regulatory approvals). Simultaneously with our announcement of the proposed acquisition, we announced our intent to list our shares of common stock on the NYSE.
>
> A charter amendment and restatement is desirable in connection with a listing of our common stock. Our charter currently includes certain provisions required by the Statement of Policy Regarding Real Estate Investment Trusts published by the North American Securities Administrators Association (the "NASAA REIT Guidelines") which apply to REITs with shares that are publicly registered with the SEC but are not listed on a national securities exchange. If we become a listed company, it will no longer be necessary for our charter to include these provisions from the NASAA REIT Guidelines, which are not typically included in the charters of exchange-traded REITs and other companies,

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

including our competitors. In addition to removing those NASAA REIT
Guidelines provisions from our charter that will no longer be necessary
upon our listing, we are seeking to update our charter in other respects
to reflect recent developments in public company governance and to
more closely reflect NYSE listed company standards. We believe
operating under our existing charter as a listed company could restrict
our ability to compete effectively for investment opportunities and
management talent and to attract and retain independent directors.

89.     These statements were false and misleading when made because the
explanation mischaracterizes and omits an accurate description of the Charter Amendment.
The statements do not accurately provide information that allow shareholders to understand the
impact of the Charter Amendment.

90.     Among other deletions, the Charter Amendment removes the fiduciary
obligations from Section 8.5, and removes the requirement that directors act "in good faith"
and "consistent with the Charter" in Section 8.9.  The Preliminary Proxy states that fiduciary
duties are deleted because "[t]his change is advisable as it is not desirable to impose more
stringent duties on directors than those under Maryland law," but this is false and misleading
from the point of view of a shareholder.

91.     The statements are also false and misleading because the Proxy omits any
mention of Section 12.2 of the Charter, which plainly provides that shareholders are entitled to
vote for "any merger or consolidation" of the Company.

92.     The Proxy Statements were also materially false and misleading because they
failed to disclose how the Individual Defendants could possibly have fulfilled their fiduciary
duties exercise due diligence and carefully consider any reasonable unsolicited merger or
acquisition offer.  In particular:

a) The March 21, 2013 Proxy Statements failed to disclose how the Individual
Defendants could have diligently and in good faith considered a complex $9 billion

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

acquisition proposal from ARCP that was made only one day before on March 20, 2013; and

b) The April 5, 2013 Proxy Statements failed to disclose how the Individual Defendants could have diligently and in good faith considered a revised complex $9.7 billion acquisition proposal from ARCP that was made only three days before on April 2, 2013.

**E.      ARCP's Offers**

93.      On March 20, 2013, ARCP's initial offer was publicly announced. ARCP offered to purchase CCPT III at a price of not less than $5.7 billion of equity value which equaled $9 billion when all debts were assumed. This equaled $12.00 per share, representing a minimum 20% premium above the original offering price of CCPT shares. ARCP stated in its offer that it believed its proposal would provide a higher level of consideration delivered sooner and with greater certainty to CCPT III shareholders as compared to the Merger.

94.      On March 27, 2013, ARCP publicly announced it had increased its offer to acquire CCPT III by $700 million – offering not less than $13.59 per share in stock, or $12.50 in cash which resulted in a total acquisition value of more than $9.7 billion. ARCP likewise revealed that it had privately reached out to Cole Holdings and its management numerous times without response.

95.      The March 20, 2013 ARCP offer detailed the resulting benefits of its acquisition in comparison to the Merger. ARCP's analysis is as follows:

**Our Proposal provides CCPT III stockholders immediate liquidity and greater certainty of value and successful execution.** Our Proposal provides immediate liquidity, certainty of value and stronger long-term growth potential for CCPT III stockholders. Additionally, we believe no regulatory approval is required, unlike the FINRA approval required in the Internalization Transaction.

**Our Proposal creates the largest, highest quality publicly traded REIT in the net lease sector.**

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

• Largest net lease REIT in sector by total capitalization and square footage;

• Diversified asset base including 1,706 properties with over 400 tenants;

• Diversified income stream with less than 33% of annualized gross rents from the ten largest tenants;

• Superior portfolio with best in class investment grade tenancy: 60% overall investment grade tenancy and 74% of top ten tenants;

• Longest weighted average lease duration in the net lease sector of 12.4 years; and

• Highly qualified management team with more than 51 years collective experience operating publicly traded REITs.

**Our Proposal results in an increase to pro forma 2013 and 2014 AFFO.** Our Proposal results in an increase to combined ARCP and CCPT III pro forma 2013 and 2014 AFFO, resulting in part from a significant reduction in operating costs, namely elimination of CCPT III asset management fees and a pronounced reduction of G&A expenses. Our Proposal results in an increase in dividends per share. CCPT III stockholders will enjoy an increase in the annualized CCPT III dividend per share of more than 9 cents, or approximately 15%, from 65 to 74 cents per share. Our Proposal is fully financed. Our Proposal is fully financed, eliminating execution risk and valuation ambiguity, while furnishing CCPT III stockholders immediate liquidity at closing. We have received commitments to upsize our existing credit facility by $1.65 billion, with an accordion feature to further increase the facility to an aggregate of $2.5 billion.

**Our Proposal results in increased liquidity.** Our Proposal results in increased liquidity from index inclusions, including MSCI (RMZ), Russell 2000, S&P 400 and potentially S&P 500.

**Our Proposal includes an experienced management team.** Our Proposal includes an experienced management team that has been responsible for more than $9 billion of

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

liquidity events in the past 15 months, and has experience in managing public companies with total enterprise value in excess of $20 billion.

**Our Proposal affords immediate access to the public capital markets.** ARCP benefits from a demonstrated access to the public capital markets, including ARCP's existing well-known seasoned issuer (WKSI) shelf registration.

**Our Proposal enhances the attributes of the combined companies, adheres to industry "best practices," and avoids combining unrelated businesses that could detract from stockholder value.** ARCP has a focused and proven business strategy that avoids the pitfalls in the Internalization Transaction, which includes the acquisition and operation of Cole Holding's non-real estate related business lines such as a broker-dealer.

96.     In addition, ARCP stated in its offer that it believed its proposal to be very compelling for CCPT III and its stockholders for the following reasons:

**Internalization Transaction Fails to Maximize Stockholder Value**

We believe that the Internalization Transaction raises significant conflict issues it only delivers certainty of value to Cole Holdings with no guarantee that CCPT III stockholders will benefit in any way. This result is in clear contrast to market norms, including recent high-performing and market-supported comparables, such as the announced merger between Cole Credit Property Trust II, Inc. ("CCPT II") and Spirit Realty Capital, Inc. (NYSE: SFC), the successful merger of American Realty Capital Trust III, Inc. with ARCP, and American Realty Capital Trust, Inc.'s merger with Realty Income Corp.

**Why aren't CCPT III stockholders being afforded the same benefits as the CCPT II stockholders?** Noted below are the significant shortcomings of the Internalization Transaction presently proposed. These same disadvantages have already been

identified by CCPT III stockholders, independent broker dealers, due diligence officers and industry commentators. The disadvantages include:

**Unseasoned Management Team:** The CCPT III and Cole Holdings senior management teams have either no or very limited prior experience running a publicly listed company.

**Non-Qualifying REIT Income:** Based on the significant consideration being paid to Cole Holdings as a result of the Internalization Transaction, one could assume CCPT III will be a REIT with material non-qualifying income for REIT qualification test purposes.

**FINRA Approval Required:** There is no certainty that FINRA will approve CCPT III's acquisition of Cole Holding's broker dealer unit without restrictions or conditions that could adversely impact the transaction.

**Undue Complexity:** Complexities arising from the operation of non-real estate related businesses, including a registered broker dealer, could detract from the combined company's business strategy and its potential valuation.

**No Stockholder Vote:** There is no prior record of non-traded REITs merging with their affiliated advisors for a fee without a stockholder vote.

**Greater Potential for Poor Stock Price Performance:** There is a history of poor stock performance and below average total stockholder returns from non-listed REITs that have completed listings, resulting primarily from a lack of institutional sponsorship and buyside support, imposed trading restrictions on common stock owned by legacy, non-traded stockholders and limited operating, portfolio and balance sheet transparency and sell-side research coverage.

**Multiple Unaddressed Risks:** CCPT III has failed adequately to address, explain and quantify the risks of achieving a listing, including:

  • Market risk - the risk that changes in the macro-economic or global geo-political climate could result in market dislocations, potentially delaying (possibly

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

indefinitely) the planned stock market listing of CCPT III or potentially reducing the listing price of shares of CCPT III common stock;

&bull; <u>Trading / liquidity risk</u> - CCPT III has failed to affirm that shares of CCPT III common stock will be listed and fully tradable without restriction at the time of listing; if CCPT III were to impose restrictions on trading, these restrictions would impair the liquidity for CCPT III stockholders; and

&bull; <u>Lack of market support</u> - prior successful listing transactions have included a market support mechanism, typically in the form of an issuer self-tender offer, that provides trading liquidity and reduces trading volatility in the days following a listing. CCPT III has not provided CCPT III stockholders assurance that any such market support will be provided or, if market support is provided, at what price level such support might be offered, and whether the dollar value of such support will be sufficient given the size of CCPT III's equity capitalization.

97.     On April 2, 2013, ARCP publicly announced it had sent a letter to the Board with a further revised offer which increased the cash portion in its offer to acquire CCPT III from 20% to 60%.  The revised proposal continues to offer not less than $13.59 per share in stock, or $12.50 in cash which equates to a total acquisition value of more than $9.7 billion. ARCP revealed that it had privately reached out to Cole Holdings and its management numerous times without response.  The press release stated that:

> ARCP once again called on the CCPT III board to either engage in a meaningful exchange of views characteristic of a genuine negotiation and fulfill their fiduciary duty to CCPT III stockholders, or to allow those stockholders, at last, a voice and a choice between ARCP's offer and Cole Holdings inferior plan.

**F.     The Board Rejected the ARCP Offers and Filed False and Misleading Supplemental Proxy Materials**

98.     In response to the offers from ARCP, the Defendants quickly issued press releases and investor presentations rejecting the offer and attempting to justify the Merger.

These releases were also filed as supplemental proxy solicitation materials with the SEC. These Proxy Statements misrepresented and/or omitted material information regarding the competitive acquisition bids made by ARCP, and the reasons for the rejection by the Individual Defendants of those bids.

99.     Specifically, in the March 21, 2013 press release and filing, the Board announced the rejection of the initial ARCP Offer, less than 48 hours after the offer was made, and reaffirmed its commitment to go forward with the Merger.  The press release stated:

> The Special Committee of the Board of Directors of Cole Credit Property Trust III, Inc. ("CCPT III") today affirmed its commitment to the previously announced definitive merger agreement pursuant to which CCPT III will acquire Cole Holdings Corporation ("Cole Holdings"), a full-scale real estate investment management firm that currently manages over $12 billion of real estate assets. . . . Additionally, the Special Committee has reviewed the unsolicited proposal from American Realty Capital Properties, Inc. (NASDAQ: ARCP) to acquire CCPT III, and has determined that the proposed sale of CCPT III to ARCP at this time would not be in the best interests of CCPT III and its stockholders.

100.     The statement that Cole Holdings "currently manages over $12 billion of real estate assets" was materially misleading when made, because as the Individual Defendants are aware, the majority of the assets that Cole Advisors manages are the assets of CCPT III.  The press release and filing also failed to mention that the remaining assets of Cole Advisors consists almost exclusively of the assets held by two other the Cole Holdings-related REITs, CCPT II and CCPT IV.  Therefore under the terms of the Merger, CCPT III will pay hundreds of millions of dollars to acquire the right to manage itself.  Further, CCPT II has announced that the $3.5 billion of AUM from that entity is being acquired by a third party, meaning that

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

there will be no additional income stream to CCPT III from those assets.  These statements and omissions are materially misleading in violation of §14(a) of the Exchange Act.

101.    Further, the quick response by the Board to confirm that it would push forward with the Merger, while simultaneously rejecting the initial ARCP Offer, demonstrates that the Board is not disinterested. Instead, the Board was committed to going forward with the Merger, without due diligence or analysis, in order to benefit the Individual Defendants to the exclusion of all other CCPT III shareholders.

102.    On March 25, 2013, CCPT III released a presentation to investors with a purported justification for the Merger of Cole Holdings and Cole Advisors, which was also filed with the SEC as supplemental proxy solicitation materials. The presentation, however, fails to disclose the fact that virtually all of Cole Holdings and Cole Advisors' revenues and profits come from Cole-related entities, principally CCPT III itself.  As such, this purported justification of the Merger constitutes a misrepresentation and concealment of material facts as to the shareholders of CCPT III.

103.    Furthermore, the presentation also misrepresented the value of the initial ARCP offer.  The presentation stated that:

- The notional value of ARCP's unsolicited proposal represents a 12% DISCOUNT to the per share value of CCPT III that CCPT III stockholders would achieve if CCPT III trades at the average of the comparables ARCP itself identifies

- Assuming that CCPT III should be valued at ARCP's current estimated implied cap rate of approximately 5.3%, then the notional value of ARCP's proposal represents a 22% DISCOUNT to the implied per share trading value of CCPT III

104.    These statements were misleading, because they were based the assumption that "CCPT III trades at the average of the comparables ARCP itself identifies," whereas, as discussed above, there are several reasons to believe that CCPT shares after the Merger would trade at lower levels.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

105.   This presentation was created by CCPT III itself under the direction of the Individual Defendants, not an independent third party, indicating that the Individual Defendants knowingly or recklessly issued false and material misleading information.

106.   On March 28, 2013, CCPT III released an additional press release which was also filed with the SEC as supplemental proxy solicitation materials, confirming that the Company had received a revised proposal from ARCP.

> The Special Committee of CCPT III's Board of Directors, consistent with its fiduciary duties, will carefully review the revised proposal in consultation with its advisors, and pursue the course of action that it believes is in the best interests of CCPT III and its stockholders.  The Special Committee reiterated that it remains committed to its previously announced course of action to acquire Cole Holdings.

107.   This statement was false and misleading when made because by its plain language it states that the "Special Committee... remains committed to the previously announced course of action," while simultaneously claiming that the Special Committee "will carefully review the revised proposal... and pursue the course of action that it believes is in the best interests of CCPT III and its stockholders."  This inconsistency demonstrates the lack of good faith by the members of the Special Committee to objectively evaluate ARCP's proposal to determine whether it might be better for the Company or the shareholders.

108.   These Proxy Statements contain numerous statements that were false and misleading when made, in violation of §14(a) of the Exchange Act.   The preparation and dissemination of the false and misleading Proxy Statements was intended to induce shareholder action which would result in substantial harm to Plaintiff and the Company's other shareholders, by encouraging the shareholders to vote in favor of the Charter Amendments, the re-election of the Board, (and implicitly to condone the improper Merger).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.      DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.      Fiduciary Duties

109.    Under Maryland law, corporate directors owe fiduciary duties to the companies they serve, which include a duty of loyalty and a duty of care. The fundamental principle of the corporate law governing CCPT III is that that the business and affairs of CCPT III are managed by and under the direction of the Board. In exercising their powers, corporate directors are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of the shareholders. The members of the Board, all of whom are named defendants in this action, owe CCPT III the highest fiduciary duties and are obligated to protect and defend the interests of CCPT III.

110.    The duty of care includes a duty by each director of CCPT III to inform himself, prior to making a business decision, of all material information available relating to that business decision, and to consider all alternatives. The more significant the decision, the greater is the requirement to probe and consider alternatives. In this case, the decisions whether to proceed with the Merger and how to respond to the ARCP bid are indisputably the most fundamental and important decisions to be made on behalf of CCPT III and its shareholders. Both the duty of care and the duty of loyalty warranted careful and cautious deliberation of these matters, after substantial analysis and due diligence to determine that both decisions were in the best interests of the shareholders of CCPT III. The Board was obligated to review the decision to internalize, the Merger plan, and the value of the acquisition offer before making its final decision. The Board was obligated to conduct that review in a thorough manner and not rush to the decision that would benefit them to the exclusion of all other CCPT III shareholders.

111.    The duty of loyalty is a broad and all-encompassing duty that imposes on corporate directors a special obligation to hold the interests of the corporation above their own interests, and to act exclusively in the best interests of the corporation and its shareholders. The duty of loyalty embodies both an affirmative duty to protect the interests of the

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

corporation and an obligation to refrain from conduct that would injure the corporation and its shareholders in any way.

**B.     Control, Access, And Authority**

112.    The Individual Defendants, because of their positions of control and authority as directors of CCPT III, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

113.    Because of their advisory, executive, managerial, and directorial positions with CCPT III, each of the Individual Defendants has access to material, non-public information about CCPT III.

114.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of CCPT III, and was at all times acting within the course and scope of such agency.

**C.     Reasonable And Prudent Supervision**

115.    To discharge their duties, the directors of CCPT III are required to exercise reasonable and prudent supervision over the management the Company.  By virtue of such duties, the officers and directors of CCPT III were required to, among other things:

(a)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(b)     ensure that CCPT III was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**D.     Audit Committee Duties**

116.    The Individual Defendants that are members of the Audit Committee, Defendants Andruskevich, Sealy and Wood, have additional duties set forth in the Audit Committee charter.

117.    The Audit Committee Charter provides that members of the Audit Committee have specified duties including duties to:

(a)   Oversee the work performed by the Company's independent auditors (including resolution of disagreements between management and the independent auditors regarding financial reporting). Such independent auditors shall report directly to the Audit Committee and shall be ultimately accountable to the entire Board of Directors through the Audit Committee;

(b)   Review with the independent auditors the scope of the audit, pre-approve the audit services (which may entail providing comfort letters in connection with securities underwritings) to be performed by the independent auditors, and review the results of the annual audit examination and any reports of the independent auditors with respect to the Company's financial statements or policies;

(c)   Obtain and review all reports and other information that the independent auditors are required by law, rule or regulation to submit to the Audit Committee, including periodic reports on (1) all critical accounting policies and practices to be used by the Company, (2) all material alternative treatments of financial information within generally accepted accounting principles in effect from time to time ("GAAP") that have been discussed with management, the ramification of the use of such alternative disclosures and treatment, and the treatment preferred by the independent auditors, and (3) other material written communications between the independent auditors and management of the Company, such as any management letter or schedule of unadjusted differences;

(d)   Establish guidelines for the Company's internal audit function, review the qualifications, appointment, replacement, reassignment and dismissal of senior management members of the Company's internal audit team, review the annual program and schedule for the Company's internal audits, review audit reports

37

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

submitted by the internal auditing staff and, at least quarterly, review the adequacy of the Company's internal controls;

(e) Prepare the report that SEC rules require to be included in the Company's annual proxy statement or, if the Company does not file a proxy statement, the Company's annual report;

(f) Discuss with management policies with respect to financial risk assessment and management, including guidelines to govern the process by which the Company undertakes financial risk assessment and management. Such discussion should include the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures; and

(g) Review with management and the independent auditors any correspondence with regulators or governmental agencies and any employee complaints or published reports that raise material issues regarding the Company's financial statements or accounting policies. In connection therewith, the Audit Committee shall establish procedures for (1) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and (2) the confidential, anonymous submission by employees of the Company of concerns of questionable accounting or auditing matters.

## VI.    BREACHES OF DUTIES

118.    Each Individual Defendant, by virtue of his or her position as a director owed to CCPT III and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of CCPT III, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors of CCPT III, the absence of good faith on their part, and a reckless

disregard for their duties to CCPT III and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to CCPT III.

119.   In violation of both the duty of care and the duty of loyalty that the Board owed to their shareholders, and with no true consideration of the best interests of CCPT III or its shareholders, the Individual Defendants authorized CCPT III simply to hand over tens of millions of dollars of assets to its own officers and directors in a transaction that was not arms-length and riddled with conflicts of interest. In addition, in less than 48 hours, the Board, without any due diligence, rejected outright a $9 billion acquisition offer from ARCP that would have allowed its shareholders to obtain an immediate and substantial profit on their investments.

120.   As fiduciaries of CCPT III and its shareholders, the members of CCPT III's Board also had a duty to personally assure themselves that CCPT III was not wasting hundreds of millions of dollars in a self-serving transaction. Their duty was to personally assure themselves that the ARCP offer was not in the best interests of CCPT III shareholders. CCPT IIII's Board failed in that duty. Defendants instead chose their own self-interest over the best interests of CCPT III.

121.   The Individual Defendants in this case likewise abrogated their duty of loyalty to the Company and its shareholders. The decision to go forward with the Merger at all costs and to outright reject the ARCP acquisition offer was one based entirely on the self-interest of the Individual Defendants to the detriment of the Company and its shareholders.

122.   In this case, CCPT III's Board put their own interests ahead of those of the Company. Defendants Cole and Nemer, as principals of CCPT III, Cole Advisors, and Cole Holdings, violated the duties of loyalty owed to CCPT III to act in the best interests of CCPT III by engineering a transaction by which they could garner tens of millions of dollars in corporate funds or assets. Defendant Cole further breached such duties by supporting the Merger that would result in a massive personal windfall to himself and in opposing the ARCP

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

acquisition bid. He opposed the ARCP acquisition bid because it would have prevented him from obtaining the substantial benefits that would result from the Merger.

123.    Defendants Andruskevich, Sealy and Wood also violated their duties of loyalty to CCPT III by voting for and approving the Merger and rejecting the ARCP acquisition bid without conducting any due diligence or analysis. As such, the Individual Defendants violated their duty of loyalty to CCPT III.

124.    The Individual Defendants supported and ultimately voted to approve the Merger without conducting any due diligence of the providence of such an action, or the valuation made on the acquisition offer. The Individual Defendants also voted to reject the ARCP acquisition bid in less than 48 hours without conducting any due diligence or engaging in negotiations or discussions with ARCP. In committing these acts and failing to fulfill their responsibilities as officers and directors of CCPT III, they breached their fiduciary duties to the Company.

**VII.    CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

125.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

126.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed provide Defendant Cole with enormous financial gain at the expense of the Company and its shareholders.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

127.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the

Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (b) disguise and misrepresent the facts and effect of the Merger.

128.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company enter into an agreement to engage in the Merger.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

129.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VIII.   DAMAGES TO CCPT III

130.    As a direct and proximate result of the Individual Defendants' actions, CCPT III has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

(a) costs incurred from going forward and overpaying for the Merger of Cole Holdings and Cole Advisors;

(b) costs incurred from extravagant employment agreements that CCPT III is granting to the principals of Cole Holdings and Cole Advisors, the same individuals who are key policy-makers for CCPT III;

(c) costs incurred from rejecting the ARCP acquisition bids which would have provided immediate profit and liquidity to the shareholders of CCPT III;

(d) costs incurred from civil investigations and litigation against CCPT III and its officers and directors;

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1    (e) significant reputational harm to CCPT III and the credibility of Defendant Cole and

2    all of the Cole-related entities;

3    (f) costs incurred from lost customers and business opportunities; and

4    (g) costs incurred from compensation paid to the defendants who have breached their

5    duties to CCPT III.

6    131.    Moreover, these actions have irreparably damaged CCPT III's corporate image

7    and goodwill.  For at least the foreseeable future, CCPT III will suffer from what is known as

8    the "liar's discount," a term applied to the stocks of companies who have been implicated in

9    illegal behavior and have misled the investing public, such that CCPT III's ability to raise

10   equity capital or debt on favorable terms in the future is now impaired.

11   **IX.    CLASS ACTION ALLEGATIONS**

12   132.    Plaintiff brings this action individually and as a class action on behalf of all

13   holders of CCPT III's stock who are being and will be harmed by Defendants' actions

14   described herein (the "Class").  Excluded from the Class are Defendants herein and any

15   person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

16   133.    This action is properly maintainable as a class action.

17   134.    The Class is so numerous that joinder of all members is impracticable.

18   According to the Company's SEC filings, there were more than 487.4 million shares of CCPT

19   III's common stock outstanding as of September 30, 2012.

20   135.    There are questions of law and fact which are common to the Class and which

21   predominate over questions affecting any individual Class member.  The common questions

22   include, *inter alia*, the following:

23   (a)    Whether Defendants violated §§ 14(a) and 20(a) of the Exchange Act

24   and SEC Rule 14a-9 by filing a materially misleading Proxy;

25   (b)    whether the Individual Defendants breached their fiduciary duties to the

26   members of the Class or aided and abetted others in the breaches of fiduciary duties by

27   engaging in the conduct alleged herein;

28

1    (c)    whether the Individual Defendants are engaging in self-dealing in

2   connection with the Merger;

3    (d)    whether the Individual Defendants have breached their fiduciary duties

4   to secure and obtain the best price reasonable under the circumstances for the benefit of

5   Plaintiff and the other members of the Class in connection with the Merger;

6    (e)    whether the Individual Defendants have breached their fiduciary duties

7   of candor to Plaintiff and the other members of the Class by soliciting shareholder votes in

8   favor of the Charter Amendment based upon inadequate disclosures;

9    (f)    whether the Individual Defendants, in bad faith and for improper

10   motives, have impeded or erected barriers to discourage other offers for the Company or its

11   assets; and

12    (g)    whether Plaintiff and the other members of the Class were harmed by

13   the consummation of the transactions complained of herein.

14    136.    Plaintiff's claims are typical of the claims of the other members of the Class

15   and Plaintiff does not have any interests adverse to the Class.

16    137.    Plaintiff is an adequate representative of the Class, has retained competent

17   counsel experienced in litigation of this nature and will fairly and adequately protect the

18   interests of the Class.

19    138.    The prosecution of separate actions by individual members of the Class would

20   create a risk of inconsistent or varying adjudications with respect to individual members of the

21   Class which would establish incompatible standards of conduct for the party opposing the

22   Class.

23    139.    Plaintiff anticipates that there will be no difficulty in the management of this

24   litigation.   A class action is superior to other available methods for the fair and efficient

25   adjudication of this controversy.

26

27

28

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1   140. Defendants have acted on grounds generally applicable to the Class with

2 respect to the matters complained of herein, thereby making appropriate the relief sought

3 herein with respect to the Class as a whole.

4 **X. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

5   141. Plaintiff brings this action derivatively in the right and for the benefit of CCPT

6 III to redress injuries suffered, and to be suffered, by CCPT III as a direct result of the

7 Individual Defendants' breaches of fiduciary duty and unjust enrichment, as well as the aiding

8 and abetting thereof, by the Individual Defendants.  CCPT III is named as a nominal defendant

9 solely in a derivative capacity.

10   142. Plaintiff will adequately and fairly represent the interests of CCPT III in

11 enforcing and prosecuting its rights.

12   143. Plaintiff was a shareholder of CCPT III common stock at the time of the

13 wrongdoing of which Plaintiff complains and has been continuously since.

14   144. Plaintiff has not made any demand on CCPT III's Board to investigate and

15 prosecute the malfeasance alleged herein. As alleged more specifically below, such a demand

16 is excused in this case because: (i) making a demand would be a futile and useless act as the

17 majority of CCPT III's directors are not able to conduct an independent and objective

18 investigation of the alleged wrongdoing; and (ii) the wrongful conduct of defendants is not

19 subject to protection under the business judgment rule. Under such circumstances, the demand

20 requirement is excused since making such a demand on the Board would be futile.

21   145. Based upon the Defendants' acts and omissions in direct violation of their

22 fiduciary duties of care, good faith, honesty and loyalty, a pre-suit demand on the CCPT III

23 Board to bring the claims asserted in this action is excused as a futile and useless act. CCPT

24 III's Board personally profited from the wrongdoing alleged in this Complaint. In fact, it was

25 the CCPT III Board who had the largest financial incentive for engaging in the misconduct

26 alleged in this complaint, misconduct that resulted in hundreds of millions of dollars in profits

27 for the Individual Defendants. It was the Board that made the ultimate decision to go forward

28

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1   with the Merger of Cole Holdings and Cole Advisors, solely to allow the Individual

2   Defendants to profit. It was the Board who has repeatedly rejected the ARCP acquisition bids

3   including a rejection of a $9 billion offer in less than 48 hours in order to protect the massive

4   profits resulting from the Merger.

5        146.    The fact that the CCPT III outright rejected the ARCP $9 billion acquisition bid

6   and appears to have rejected a $9.7 billion bona fide offer from a disinterested outside party,

7   without any due diligence, analysis or negotiation demonstrates conclusively that demand is

8   futile in this case. As fiduciaries of CCPT III, the Individual Defendants each had a duty to

9   analyze that acquisition bid, conduct a thorough due diligence analysis and then reach an

10  independent decision on the merits of the acquisition offer. Each of the Individual Defendants

11  was required to do this, with the best interests of the CCPT III shareholders in mind. Instead,

12  the CCPT III completely ignored the initial overture for a potential acquisition of CCPT III by

13  ARCP, and then rejected the second public acquisition offer in under 48 hours, and rejected a

14  third which increased the target price by $700 million.  All of the Individual Defendants had a

15  financial incentive to push forward with the Merger of Defendants Cole Holdings and Cole

16  Advisors and to outright reject the ARCP acquisition. Both these decisions preserved the

17  hundreds of millions of dollars that would accrue to the benefit of the Individual Defendants

18  by allowing the Merger plan to go forward. The Individual Defendants also received

19  extravagant and uncalled for compensation packages as part of the Merger in order to become

20  purported "employees" of CCPT III, providing the exact same services after the Merger as

21  they would prior to the Merger.

22       147.    The Individual Defendants personally voted for and supported the decisions to

23  go forward with the Merger and to reject the ARCP acquisition bid. As such, the Individual

24  Defendants are in no position to evaluate the fairness and propriety of their own actions. The

25  Individual Defendants lack the objectivity to investigate and prosecute claims against

26  themselves for their clear violation of their duties of care and loyalty owed to CCPT III and its

27  shareholders.

28

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

148.     The Individual Defendants' decision to go forward with the Merger of Cole Holdings and Cole Advisors is not protected by the business judgment rule. The Individual Defendants voted for a Merger that would provide zero benefit to the shareholders of CCPT III while rewarding the Individual Defendants with hundreds of millions of dollars. No analysis was done to determine whether the Merger was in the best interests of CCPT III and what the fair value of such an internalization should have been, assuming that an internalization was warranted. The Board of CCPT III had an independent duty to consider all reasonably available information before making any business decision. Demand is futile since it is evident that the Individual Defendants have personally engaged in misconduct that is not protected by the business judgment rule.

149.     The Individual Defendants' decisions to reject the ARCP acquisition bids are also not protected by the business judgment rule. The Board owed a duty of care and of loyalty to the Company its shareholders. This would have warranted a thorough due diligence review of the acquisition bid and, at minimum, negotiations with ARCP. The Board instead voted to outright reject the ARCP acquisition $9 billion bid, without negotiation in less than 48 hours and has ignored a $9.7 billion bid. The Individual Defendants are not protected by the business judgment rule because they did not exercise any business judgment. Instead, the Individual Defendants made a decision, without conducting any due diligence, for the sole purpose of profiting from the massive windfall to the Individual Defendants that would result from the Merger.

150.     The acts complained of constitute violations of the fiduciary duties owed by CCPT III's officers and directors and are incapable of ratification.

151.     Demand is futile against Defendant Cole.  Defendant Cole is the founder either directly or indirectly of each of the entities described herein, including CCPT III.  He is the sole owner of Cole Holdings, which owns Cole Advisors, the entity that will be acquired by CCPT III in the multimillion dollar Merger, and therefore he will receive the lion's share of the benefits of that transaction, including a lavish employment agreement.  Under the terms of the

Merger, Defendant Cole will receive at least $148 million in cash and stock.  Through his interlocking control of all of the Cole-related entities, Defendant Cole has acted to benefit himself through these shell corporations, and the other Individual Defendants, to the detriment of CCPT III and the remaining shareholders of CCPT III, including Plaintiff.  Defendant Cole has served as the Chief Executive Officer, President and Chairman of the Board of CCPT III since CCPT III's formation in January 2008. As sole shareholder of Defendant Cole Holdings since its formation in August 2004, Defendant Cole has served as its Chairman of the Board since October 2007, and previously served as its Chief Executive Officer from August 2004 until June 2011, as its President and Treasurer from August 2004 until April 2010, and as its Secretary from October 2007 to April 2010. He also has served as the Chief Executive Officer of Cole Advisors from its formation in January 2008 until June 2011, as its President from January 2008 until April 2010 and as its Treasurer from January 2008 until September 2008. Defendant Cole, by participating in the Merger and the rejection of the ARCP offers, has knowingly, recklessly, or at least grossly negligently harmed and will continue to harm the Company.  Moreover, as a member of the Board, Defendant Cole participated in the issuance of the improper statements in the Company's Proxy Statements.  Defendant Cole faces a substantial likelihood of liability for his breaches of fiduciary duty.  Further, he is indisputably interested in the outcome of this litigation that is centered on him, his compensation, and his various related entities.  Demand is futile against Defendant Cole.

152.    Demand is futile against Defendant Nemer.  In addition to serving as a director of the Company, Defendant Nemer has served as Chief Executive Officer of Cole Holdings since June 2011 and as its President since April 2010.  Additionally, Defendant Nemer has served as Chief Executive Officer of Defendant Cole Advisors since June 2011 and as its President since April 2010.  He previously served as Cole Advisors' Executive Vice President and Managing Director of Capital Markets from September 2008 until April 2010, and as its Executive Vice President, Securities and Regulatory Affairs from its formation in January 2008 until September 2008. Defendant Nemer has also served as President, Secretary and

1    Treasurer of Cole Capital Corporation since January 2008, and as a member of the boards of
2    directors of numerous Cole-related entities, including Cole Credit Property Trust I, Inc., Cole
3    Credit Property Trust IV, Inc. and Cole Income NAV Strategy.  Defendant Nemer's financial
4    interests are bound completely with Defendant Cole.  Defendant Nemer has no ability to act in
5    a manner independent of Defendant Cole. Defendant Nemer also will receive a substantial
6    financial windfall from the Merger as a principal of Cole Advisors.  Defendant Nemer is
7    unable to make independent and appropriate decisions on behalf of CCPT III and in the best
8    interests of CCPT III and its shareholders, and therefore demand is futile as to Defendant
9    Nemer.

10          153.    Demand is futile as to the purportedly "independent directors," Defendants
11   Andruskevich, Sealy and Wood.  These Defendants are members of the Audit Committee, and
12   have breached their duties to evaluate the financial records of the Company, which would have
13   shown that consideration for the Merger was illusory.  These Defendants, who are also
14   members of the "special committee of independent directors" entrusted to evaluate the terms
15   of the Merger to ensure that the deal was in the best interests of CCPT III and its shareholders,
16   breached their fiduciary duties of loyalty and good faith by knowingly or recklessly
17   disregarding the terms of the Merger that have harmed and will continue to harm the
18   Company.  Defendants Andruskevich, Sealy and Wood also rejected the ARCP offers without
19   conducting due diligence, and recommended that the Merger proceed without a shareholder
20   vote.  Further, Defendants Andruskevich, Sealy and Wood are dominated and controlled by
21   Defendant Cole and will approve any transactions for which Defendant Cole requests
22   approval.  Thus, Defendants Andruskevich, Sealy and Wood face a substantial likelihood of
23   liability for breach of their fiduciary duties and corporate waste.  Any demand upon them is,
24   therefore, futile.

25          154.    The Board cannot be relied upon to reach a truly independent decision whether
26   to commence the demanded action against themselves and the officers responsible for the
27   misconduct alleged in this derivative complaint because, among other things, the Board is

28

currently dominated by the Individual Defendants, who were personally and directly involved in the acts of mismanagement, abuse of control and waste alleged and who each approved the actions complained of, and to whose directives and views the Board has consistently acceded and will continue to accede. None of them are in a position to fairly evaluate their own misconduct in this case.

155.    A majority of the directors received personal and financial benefits while they caused or permitted CCPT III to engage in the extensive misconduct detailed in this derivative complaint.

156.    Demand is futile for additional reasons.  If CCPT III's current directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties alleged in this Complaint by D&O Insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders.  However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by CCPT III against the Individual Defendants, known as the "insured versus insured exclusion."  As a result, if the Individual Defendants were to sue themselves or certain of the officers of CCPT III, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  Therefore, the Individual Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O insurance policy.

157.    Under the factual circumstances described herein, the Individual Defendants are more interested in protecting themselves than they are in protecting CCPT III by prosecuting this action.  Therefore, demand on CCPT III and its Board is futile and is excused.

158.    CCPT III has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.  Yet, the Individual Defendants have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct.  Thus, the Individual Defendants are breaching their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches, rendering any demand upon them futile.

**First Cause of Action**

**Class Claim Against The Individual Defendants for Violations
of §14(a) of the Securities Exchange Act**

159.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

160.    Rule 14-A-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. §240.14-A-9.

161.    Defendants filed false and misleading Proxy Statements with the SEC between March 6, 2013 and April 5, 2013.  The Proxy Statements described the terms of the Merger and the Charter Amendment.  The Proxy Statements misrepresented and/or omitted material information about the true value of the Company and the Merger process.

162.    Defendants solicited action from the Plaintiff and members of the Class by means of these Proxy Statements which contained false and misleading statements concerning, *inter alia*, the values of Cole Advisors and Cole Holdings and how that value was derived, and omitted to state material facts which were necessary to make their statements contained therein not false and misleading, as alleged above.

163.    Each of the matters described above would have been considered by a reasonable investor, separately as well as in the aggregate, to have been material to his or her

decision in voting on the matters presented in the Proxy Statements, and to have been a material part of the mix of information upon which such decisions were made.

164.    These misrepresented or omitted facts are material, because, under all the circumstances, there is a substantial likelihood a reasonable shareholder would consider the false or misleading statements or omitted facts important in deciding how to vote on the Proxy Statements or a material part of the mix of information available to Class members in deciding how to exercise their voting rights.

165.    By reason of the foregoing, the Proxy Statements were materially false and misleading, in violation of Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder.

166.    None of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements made in the Proxy Statements were true, without omissions of any material facts, and not misleading. Specifically, the Defendants named in this Count are liable under Section 14(a) of the Exchange Act because they provided material information that they knew, understood and intended would be contained in the Proxy, and that was false and misleading and/or omitted material and necessary facts.

167.    As a result of these Proxy violations, the Class members are threatened with irreparable injury, for which there is no adequate remedy at law, as well as substantial economic damages.

**Second Cause of Action**

**Class Claim Against the Individual Defendants, Cole Advisors and
Cole Holdings for Violations of §20(a) of the Securities Exchange Act**

168.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

169.    The Individual Defendants, Cole Advisors and Cole Holdings acted as controlling persons of the Company within the meaning of §20(a) of the Exchange Act.  By reason of their positions as directors of CCPT III, and their ownership of CCPT III stock, these

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

Defendants had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.  Defendant Cole controlled each of the other Defendants.  By reason of such conduct, these Defendants are liable pursuant to §20(a) of the Exchange Act.

170.   As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with ownership of CCPT III stock.

### Third Cause of Action

### Derivative Claim Against The Individual Defendants, Cole Advisors and Cole Holdings for Breach of Fiduciary Duty

171.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

172.   Each of the Defendants owed fiduciary duties to CCPT III and its shareholders. Pursuant to CCPT III's Charter, the Individual Defendants specifically "have a fiduciary duty to the shareholders of [CCPT III], including a specific fiduciary duty to supervise the relationship of [CCPT III] with [Cole Advisors]."  The Charter also states that Cole Advisors, which is owned and controlled by Cole Holdings, "has a fiduciary responsibility to [CCPT III] and to the Shareholders."

173.   Defendants specifically owed and owe CCPT III the highest obligation of good faith and loyalty in the administration of the affairs of CCPT III, including a duty to conduct due diligence with regard to any acquisitions made by CCPT III and to evaluate the benefits to shareholders of any potential acquisition offers from outside parties. As directors of CCPT III, the Defendants were and are required to use their abilities to control and manage CCPT III in a fair, just and equitable manner in order to ensure that the Company is in compliance with applicable laws and contractual obligations, to refrain from abusing their positions of control, and not to favor their own interests at the expense of CCPT III and its shareholders. Defendants violated their fiduciary duties to CCPT III, including without limitation their duties of care, good faith, honesty and loyalty.

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

174.    By their acts and omissions alleged herein, Defendants, and each of them, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of CCPT III in a manner consistent with the best interest of the shareholders of CCPT III.

175.    Each of the Defendants violated his or its duty of care by voting to approve the acquisition of Cole Holdings and its subsidiaries without conducting due diligence and without acting in the interests of the shareholders of CCPT III. Defendants violated their fiduciary duties by approving the Merger to protect their own pecuniary interests in disregard of the shareholders of CCPT III.

176.    Each of the Defendants violated his or its duty of care by failing to analyze and evaluate any strategic alternatives to the Merger, and by summarily rejecting the bids of ARCP. The Merger was approved for the benefit of the Individual Defendants, to reap profits for themselves at the expense of CCPT III and its shareholders.

177.    Each of the Defendants further breached his or its fiduciary duties by failing to implement appropriate measures to ensure that CCPT III's relationship with Cole Advisors and Cole Holdings did not become a vehicle for wrongful self-dealing. Each of the Defendants knew of the inherent conflicts of interest in the structure of the relationship among CCPT III, Cole Holdings and Cole Advisors, but knowingly or recklessly allowed self-dealing.

178.    Each of the Defendants breached his or its fiduciary duties by rejecting the ARCP $9 billion acquisition offer in one day without conducting any due diligence of the offer, and similarly rejecting the later $9.7 billion offer. The ARCP bids would result in immediate CCPT III and shareholder profit and liquidity.  Each of the Defendants violated his or its fiduciary duties by going forward with the Merger and rejection of the ARCP offers.

179.    The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to the Individual Defendants' gross mismanagement, bad faith and/or reckless disregard of the rights and interests of CCPT III, and it shareholders. Each of the members of the Board made the decisions subject to this action for their own pecuniary gain.

180.     As a result of the foregoing, the Defendants have participated in harming CCPT III and have breached fiduciary duties owed to CCPT III. The Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted the other Defendants in the breaches of their fiduciary duties.

181.     As a result of the Defendants' wrongful conduct, CCPT III has suffered and continues to suffer economic losses and non-economic losses, all in an amount to be determined according to proof at the time of trial. As a direct and proximate result of defendants' foregoing breaches of fiduciary duties, CCPT III has suffered or will suffer hundreds of millions of dollars in damages, including, but not limited to, the Merger fee paid to the Individual Defendants and the amount lost due to CCPT III's outright rejection of the ARCP acquisition without conducting any due diligence.

### Fourth Cause of Action

### Derivative Claim Against Cole Holdings and CREInvestments for Aiding and Abetting Breach of Fiduciary Duty

182.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

183.     Defendants Cole Holdings and CREInvestments aided and abetted the Individual Defendants' breaches of fiduciary duty by their active participation, aid, encouragement, and/or ratification of the breach, for their own benefits.

184.     Defendant Cole Holdings is the parent corporation of Cole Advisors, which owed a fiduciary duty to CCPT III, both pursuant to CCPT III's Charter and the Advisory Agreement between Cole Advisors and CCPT IIII. Defendant Cole Holdings knew of that fiduciary relationship. Defendant Cole Holdings is also wholly owned by Defendant Cole and Defendant Nemer serves as the President of Cole Holdings. Both individuals are directors of CCPT III. As such, Defendant Cole Holdings was well aware of the breach of fiduciary duties being undertaken by CCPT III's Board, since the individuals engaged in that misconduct were also the top two senior individuals at Defendant Cole Holdings. The breach of fiduciary duties

1   resulted in a windfall for Defendant Cole Holdings, which is to receive substantial economic

2   benefits from being "acquired" by CCPT III.

3        185.    Defendant Cole Holdings substantially assisted the breach of fiduciary duties of

4   the Individual Defendants by allowing itself to serve as the corporate mechanism by which the

5   Individual Defendants have positioned themselves to divert tens of millions of dollars away

6   from CCPT III and into their own pockets. In doing so, Defendant Cole Holdings provided

7   substantial aid, encouragement and support to the breach of fiduciary duties by the Individual

8   Defendants.

9        186.    Defendant CREInvestments also was fully aware of the breach of fiduciary

10   duties being undertaken by the Individual Defendants. CREInvestments was, in fact, created to

11   be the instrument of this malfeasance since it would purportedly absorb Defendant Cole

12   Holdings and Cole Advisors (with substantial profit to the Individual Defendants) and then

13   become a wholly owned subsidiary of CCPT III. As such, Defendant CREInvestments not

14   only provided substantial aid, encouragement and support to the Individual Defendants, but

15   did so knowingly and intentionally.

16        187.    The conduct of Defendants Cole Holdings and CREInvestments was a

17   substantial cause of the harm alleged herein. If Cole Holdings and CREInvestments had not

18   provided their approval and support of the Merger plan, or if they had prevented the Individual

19   Defendants from breaching their fiduciary duties to CCPT III, CCPT III and its shareholders

20   would not have suffered the serious injuries caused by CCPT III's misguided Merger of Cole

21   Advisors and the rejection of the ARCP acquisition bids.

22        188.    As a result of this wrongful conduct, CCPT III has suffered and continues to

23   suffer economic and non-economic losses, all in an amount to be determined according to

24   proof at trial.

25        189.    The acts of Defendants Cole Holdings and CREInvestments, and each of them,

26   were done maliciously, oppressively, and with intent to defraud, and Plaintiff on behalf of

27

28

CCPT III is entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

### Fifth Cause of Action

### Derivative Claim Against the Individual Defendants for Unjust Enrichment

190.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

191.     As alleged above, Defendant Cole and Defendant Nemer have a substantial financial interest in the Merger and in the lavish employment agreements for each of them that have been approved in connection with the Merger.  Defendant Cole and Defendant Nemer will be unjustly enriched at the expense of and to the detriment of CCPT and its shareholders.

192.     Defendant Cole and Defendant Nemer improperly used their undue control and influence over CCPT III to secure approval for the Merger and the related employment agreements.

193.     In addition, Defendants Andruskevich, Sealy, and Wood received substantial compensation as directors of CCPT III while they were simultaneously breaching their fiduciary duties to the Company.

194.     Accordingly, the Individual Defendants should each be required to disgorge all profits, benefits and other compensation that each of them have obtained from their wrongful conduct and fiduciary breaches described herein.

### Sixth Cause of Action

### Derivative Claim Against the Individual Defendants for Corporate Waste

195.     Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

196.     As alleged in detail herein, the Individual Defendants had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of CCPT III and in the use and preservation of its property and assets, and the highest obligation of fair dealing.

56

197.   The Individual Defendants wasted CCPT III's corporate assets by failing to conduct proper due diligence regarding both the Merger and the rejection of the ARCP acquisition bids. In both decisions, the Individual Defendants chose to waste corporate resources by putting money into the pockets of the Individual Defendants to the detriment of CCPT III's shareholders.

198.   The Individual Defendants also wasted corporate assets by paying improper compensation and bonuses to certain of CCPT III's directors that breached their fiduciary duty. The fact that these compensation packages were paid and the size of these compensation packages constitutes gross waste of corporate assets.

199.   As a result of the Individual Defendants' wrongful conduct, CCPT III has suffered and continues to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

## XI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

A.   An order certifying the Class as set forth herein and designating Plaintiff as the representative thereof;

B.   An order declaring the Proxy Statements to be materially false and misleading in violation of Section 14(a) of the Exchange Act;

C.   An order against all the Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of federal securities laws, breaches of fiduciary duties, aiding and abetting breaches of fiduciary duty, unjust enrichment, and corporate waste;

D.   An order directing CCPT III to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect CCPT III and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

- a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a provision to permit the shareholders of CCPT III to nominate at least two candidates for election to the Board;

- a proposal to ensure the accuracy of the qualifications of CCPT III's directors, executives and other employees;

E.    An order awarding to CCPT III restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

F.    An order awarding damages against all Defendants, jointly and severally, in an amount to be proven at trial;

G.    An order awarding a preliminary and/or permanent injunction precluding CCPT III and its Board from holding a shareholder vote on behalf of the Company securing approval of the Charter Amendments unless and until adequate supplemental disclosures are made regarding the Merger;

H.    An order directing Defendants to make substantial additional disclosures to the Company's Proxy Statements to make the Proxy Statements not false and misleading;

I.    An order awarding any additional appropriate equitable relief, including any injunctive or declaratory relief necessary to change and/or reform CCPT III's corporate governance, policies and culture;

J.    Awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein, and punitive damages;

K.    Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs; and

L.    Awarding such other relief as this Court may deem just and proper.

58

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

1

**XII.    JURY DEMAND**

2

      Plaintiff demands a trial by jury.

3

4

Dated:  April 8, 2013                                            DESSAULES LAW GROUP

5

6

                                       By:  */s/ Jonathan A. Dessaules*

7

                                          JONATHAN A. DESSAULES

8

Jonathan A. Dessaules
Rachel W. Maron

9

2700 North Central Avenue, Suite 1250
Phoenix, AZ 85004

10

Telephone: (602) 274-5400
Facsimile: (602) 274-5401

11

12

Frank J. Johnson
Shawn E. Fields

13

Cecilia E. Rutherford
JOHNSON & WEAVER, LLP

14

110 West "A" Street, Suite 750
San Diego, CA 92101

15

Telephone: (619) 230-0063
Facsimile: (619) 255-1856

16

17

*Attorneys for Plaintiff Ben Schindler*

18

19

20

21

22

23

24

25

26

27

28

VERIFIED CLASS ACTION AND SHAREHOLDER DERIVATIVE COMPLAINT

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Ben Schindler, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.    I have reviewed the complaint with my counsel and authorize its filing.

2.    I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.    I am a shareholder of Cole Credit Property Trust III (the "Company"), and have been at all relevant times asserted in the complaint.  Specifically, on November 29, 2011, I purchased 5,000 shares of the Company at $10 per share.  Through a dividend reinvestment plan, I now own 5,476 shares of the Company.

5.    I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.    I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __4__ day of April, 2013.

_____

Ben Schindler